IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| T.M., by and through her guardian ad litem, John D. Elliott,<br><br>                                    Plaintiff,<br><br> v.<br><br>South Carolina Department of Social Services (SCDSS), Irene Williams, April Fogle, Lalita Garnett, Lawanda Greggs, Alex Wright, Mary Buskey, Michelle Ingram-Smith, Anna Jones, Nicole Scott, Melissa Graham, Yvonne Wilson, Shavonna Gibson, South Carolina Youth Advocate Program, Inc., and Kim Long;<br><br>                                    Defendants. | Civil Action No:  3:15-cv-02084-TLW<br><br><br>**SECOND AMENDED COMPLAINT**<br>(***Jury Trial Demanded***) |

T.M., by and through her guardian ad litem, John D. Elliott, amends her complaint and asserts the following:

## I.    Introduction.

1.    This is a civil rights action arising out of medical and physical neglect by the South Carolina Department of Social Services (SCDSS).  Plaintiff has not received therapy for sexual abuse, physical abuse, or severe neglect and prescriptions by physicians and recommendations by psychologists, therapists, and counselors for trauma therapy, therapeutic foster care, and residential treatment are ignored by Defendants based solely on the desire to reduce the agency's budget at the expense of the foster children.  A companion case, asking for injunctive relief, is filed in the United States District Court, Distric of South Carolina, Case No. 3:14-cv-03933-TLW.

## II.    Parties and Jurisdiction.

2.      That Plaintiff realleges paragraph 1 as if restated herein verbatim.

3.      Plaintiff **T.M.** is a citizen and resident of Richland County.  She is a minor child (DOB: 3/2002), an orphan, and a ward of the State of South Carolina and this matter is brought on her behalf by her guardian ad litem, John D. Elliott.  The parental rights of Plaintiff's parents were terminated in March of 2012.

4.      That Defendant **South Carolina Department of Social Services (SCDSS)** is an agency of the State of South Carolina created by the General Assembly of the State of South Carolina. SCDSS is responsible for ensuring that the children in its custody are safe and are receiving adequate care and treatment in accordance with applicable legal standards.

5.      That Defendant **Irene Williams** was the social worker for Plaintiff T.M. from August 13, 2009 until December 12, 2012.  Defendant Irene Williams was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Irene Williams was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

6.      That Defendant **April Fogle** was the social worker for Plaintiff T.M. from December 10, 2012 until January 18, 2013.  Defendant April Fogle was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant April Fogle was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

2

7.     That Defendant **Lalita Garnett** was the social worker for Plaintiff T.M. from January 18, 2013 until January 23, 2014.  Defendant Lalita Garnett was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Lalita Garnett was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

8.     That Defendant **Lawanda Greggs** was the social worker for Plaintiff T.M. from January 23, 2014 until May 19, 2014.  Defendant Lawanda Greggs was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Lawanda Greggs was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

9.     That Defendant **Alex Wright** was the social worker for Plaintiff T.M. from May 19, 2014 until August 18, 2014.  Defendant Alex Wright was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Alex Wright was responsible for supervising his clients and the foster placement as well as the safety, well-being, and treatment of his clients in accordance with applicable legal standards and professional standards.

10.     That Defendant **Mary Buskey** was the social worker for Plaintiff T.M. from August 18, 2014 until September 17, 2014.  Defendant Mary Buskey was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Mary Buskey was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

11.     That Defendant **Michelle Ingram-Smith** was the social worker for Plaintiff T.M. from September 17, 2014 until October 12, 2014.  Defendant Michelle Ingram-Smith was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Michelle Ingram-Smith was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

12.     That Defendant **Anna Jones** was the social worker for Plaintiff T.M. from October 12m 2014 and upon information and belief, is stil the child's social worker.  Defendant Anna Jones was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Anna Jones was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

13.     That Defendant **Nicole Scott** was the social worker for Plaintiff T.M. from March 11, 2011 until July 1, 2014.  Defendant Nicole Scott was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Nicole Scott was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

14.     That Defendant **Shavonna Gibson** was the social worker for Plaintiff T.M. from July 1, 2014 until December 12, 2012.  Defendant Shavonna Gibson was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Shavonna Gibson was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

15.     That Defendant **Melissa Graham** was the social worker supervisor for T.M. Defendant Melissa Graham was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Melissa Graham was responsible for supervising her caseworkers as well as the safety and well-being of the clients in accordance with applicable legal standards and professional standards.

16.     That Defendant **Yvonne Wilson** was the social worker supervisor for T.M. Defendant Yvonne Wilson was a SCDSS employee and a resident of South Carolina during the times alleged herein. Defendant Yvonne Wilson was responsible for supervising her caseworkers as well as the safety and well-being of the clients in accordance with applicable legal standards and professional standards.

17.     That **South Carolina Youth Advocate Program, Inc. (SCYAP)** is a domestic nonprofit corporation whose registered agent is Alexander "Lex" Cole, located at 140 Stoneridge Drive, Suite 350, Columbia, South Carolina 29210.

18.     That Defendant **Kim Long** was the social worker for Plaintiff T.M. while T.M. was a client of South Carolina Youth Advocate Program, Inc.  Defendant Kim Long was a SCYAP employee and a resident of South Carolina during the times alleged herein. Defendant Kim Long was responsible for supervising her clients and the foster placement as well as the safety, well-being, and treatment of her clients in accordance with applicable legal standards and professional standards.

19.     That this Court has jurisdiction over the subject matter of this action under Article V Section 11 of the Constitution of South Carolina; Sections14-1-80, 15-3-555, 15-78-100, and 33-56-180 of the Code of Laws of South Carolina 1976, as amended; and the Common Law of South Carolina.

20.    That venue is proper in this Court under Sections 15-78-100 and 15-7-30 of the Code of Laws of South Carolina 1976, as amended. Because Plaintiff a minor child at the time of the events was in the custody of the Richland County Department of Social Services, some of the acts and omissions alleged herein occurred in Richland County, South Carolina.

### III.    Plaintiff T.M.'s Substantive Due Process Rights Have Been Violated By SCDSS and YAP

21.    That Plaintiff realleges paragraphs 1 – 20 as if restated herein verbatim.

22.    Plaintiff T.M. has been in foster care on multiple occasions, from November 2003 until February 2006.

23.    Plaintiff T.M. entered into the temporary care and custody of the SCDSS this last occassion on August 13, 2009 due to sexual abuse, physical abuse, and severe neglect.

24.    Allegations of abuse included sexual abuse by family members, to include her father, uncles, aunts, and visitors, as T.M. was sexually trafficked by her parents in exchange for drugs.

25.    Defendant Irene Williams became Plaintiff T.M.'s social worker from August 13, 2009 until December 10, 2012.  During this time period Defendant Irene Williams failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff T.M. has caused severe mental health problems and include two hospitalizations in mental health wards since 2012.

26.    Defendant Nicole Scott became Plaintiff T.M.'s adoptions social worker from March 11, 2011 until July 1, 2014.  During this time period Defendant Nicole Scott failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to

treat Plaintiff T.M. has caused severe mental health problems and include two hospitalizations in mental health wards since 2012.

27.     Plaintiff T.M. entered the permanent custody of SCDSS in 2012 when the Family Court of the Fifth Judicial Circuit terminated the parental rights of T.M.'s parents.

28.     In August 2012, SCDSS attempted to place Plaintiff T.M. with her aunt in Rhode Island.  SCDSS knew that this same aunt resided with Plaintiff T.M.'s biological mother, the same mother who sexually abused Plainiff T.M. and trafficked her for drugs.  This was part of a SCDSS instituted pattern and practice of sending children to out of state relatives in order reduce the size of its caseloads to eliminate the cost of providing services and case management to foster children.

29.     In August 2012, the ten-year-old child attempted to commit suicide by hanging herself in her room in order to avoid having to move into a home where her abusive biological mother resided.  Plaintiff was hospitalized in a mental health ward after the suicide attempt.

30.     Upon discharge from residential treatment, Plaintiff T.M.'s medical providers – physicians, therapists, and hospital social workers – recommended that Plaintiff T.M. be placed in therapeutic foster care.  SCDSS refused to place her in therapeutic foster care.  SCDSS has a pattern and practice of refusing to place mentally ill and severely abused and neglected foster children in therapeutic foster care in order to eliminate the higher costs of foster care board payments for therapeutic foster children and the costs of more labor-intensive and more frequent provision of services and case management that is required for therapeutic foster care children.

31.     Defendant April Fogle became Plaintiff T.M.'s social worker from December 10, 2012 until January 18, 2013.  During this time period Defendant April Fogle failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat

Plaintiff T.M. has caused severe mental health problems that includes a hospitalizations in a mental health ward.

32.     Defendant Lalita Garnett became Plaintiff T.M.'s social worker from January 18, 2013 until January 23, 2014.  During this time period Defendant Lalita Garnett failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff T.M. has caused severe mental health problems and include hospitalization in a mental health ward.

33.     In October 2013, Plaintiff T.M.'s therapist at Columbia Area Mental Health recommended Plaintiff be placed in residential treatment at Three Rivers in West Columbia, South Carolina. SCDSS refused this recommendation based upon its pattern and practice of refusing to place mentally ill and severely abused and neglected foster children in residential treatment in order to eliminate the high costs of Medicaid.

34.     Defendant Lawanda Greggs became Plaintiff T.M.'s social worker from January 23, 2014 until May 19, 2014.  During this time period Defendant Lawanda Greggs failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff T.M. has caused severe mental health problems and included hospitalization in a mental health ward.

35.     Upon information and belief, Plaintiff T.M. was placed in regular foster care under SCYAP during the month of February 2014.  Defendant Kim Long was assigned as her foster care social worker by Defendant SCYAP.

36.     Defendant Alex Wright became Plaintiff T.M.'s social worker from May 19, 2014 until August 18, 2014.  During this time period Defendant Alex Wright failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff

T.M. has caused severe mental health problems and included hospitalization in a mental health ward.

37.    Defendant Shavonna Gibson became Plaintiff T.M.'s adoptions social worker from July 1, 2014 until the present.  During this time period Defendant Shavonna Gibson failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff T.M. has caused severe mental health problems and include hospitalization in a mental health ward.

38.    Defendant Mary Buskey became Plaintiff T.M.'s social worker from August 18, 2014 until September 1, 2014.  During this time period Defendant Mary Buskey failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff T.M. has caused severe mental health problems and included hospitalization in a mental health ward.

39.    Defendant Michelle Ingram-Smith became Plaintiff T.M.'s social worker from September 17, 2014 until October 12, 2014.  During this time period Defendant Michelle Ingram-Smith failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff T.M. has caused severe mental health problems and included hospitalization in a mental health ward.

40.    Defendant Anna Jones became Plaintiff T.M.'s social worker from October 12, 2014 until the present.  During this time period Defendant Anna Jones failed to provide sexual trauma therapy and any evidence based psychological therapy.  This failure to treat Plaintiff T.M. has caused severe mental health problems and included hospitalization in a mental health ward

41.    Plaintiff T.M. and her foster mother were without the services of a SCDSS foster care social worker from February 2014 to October 2014. Plaintiff fell off of the books at SCDSS, and although she had an adoptions worker, Plaintiff T.M. could not receive services or Medicaid insurance.  It appears that a social worker was assigned – just no one from SCDSS ever showed up to provide services to Plaitniff T.M.

42.    The lack of Medicaid insurance prevented Plaintiff T.M. from receiving psychiatric care, psychological counseling and treatment, and medication since on or about October 2014.

43.    Plaintiff T.M.'s foster mother made eighty phone calls, more or less, to SCDSS in an attempt to secure a foster care worker for Plaintiff T.M. and Medicaid insurance for the child.

44.    Plaitniff T.M.'s foster mother left messages with the director of Richland County Department of Social Services, the supervisors of foster care, Yvonne Wilson and Mary Busky, and numerous other employees of the agency in an effort to have a social worker assigned and to have Plaintiff T.M. enrolled in Medicaid.

45.    Since Plaintiff T.M.'s placement in foster care, SCDSS social workers have not required that she receive trauma therapy.  Plaintiff T.M.'s SCDSS social workers did not have the knowledge, education, and training to understand that Plaintiff T.M. needed trauma therapy and these same social workers only placed her in residential treatment for her suicide attempt. These SCDSS social workers lacked the knowledge, education, and training to provide trauma therapy which will prevent severe disruptions in Plaintiff T.M.'s life, such as the suicide attempt.

46.    On Tuesday, October 28, 2014 Plaintiff T.M.went to school and told her teachers and friends that she wanted to end her life. She told them that she wasn't happy with herself and that her mom was getting rid if her.

47.     The guidance counselor called Plaintiff T.M.'s foster mother  at work to let her know that Plaintiff T.M. was in a crisis and that she needed to get to the school immediately. When Plaintiff T.M.'s foster mother  arrived, Plaintiff T.M.'s guidance counselor had already spoken with Sharon Lee from SCDSS who instructed her to call EMS to transport Plaintiff T.M.to the hospital.

48.     Plaintiff T.M.'s foster mother  rode in the ambulance with Plaintiff T.M. and she was still upset out of fear that Plaintiff T.M.'s foster mother  was getting rid if her. When they got to the hospital they were met by Pam Knipper, who is Plaintiff T.M.'s guardian ad litem, and Anna Jones, who was her newly appointed case worker.   Anna Jones had been assigned to the case for sixteen days but had yet to make contact with Plaintiff T.M. or her foster mother.

49.     Plaintiff T.M.was admitted into Baptist. Her attending physician called Plaintiff T.M.'s foster mother  to inform her that Plaintiff T.M. is suffering from severe PTSD and that no one from SCDSS had been there to visit with Plaintiff T.M. as of Monday, November 3, 2014.

50.     On November 11, 2014 SCDSS removed Plaintiff T.M. from Plaintiff T.M.'s foster mother 's home.

51.     During November 2014 Plaintiff was placed into Therapeutic Foster Care and into the physical custody of Defendant SCYAP.  Defendant Kim Long was assigned as her therapeutic foster care social worker by Defendant SCYAP.

52.     SCDSS has alleged numerous reasons why Plaintiff T.M.'s foster mother  is unfit to remain a foster parent for Plaintiff T.M., but these reasons are pretextual and are strictly in retaliation for Plaintiff T.M.'s foster mother  raising these issues of neglect and medical neglect by SCDSS.  Plaintiff T.M.'s foster mother  was named foster parent of the year for South Carolina in the past.

53.    Upon Plaintiff T.M.'s discharge from the hospital, Dr. Malone recommended that it would be in Plaintiff T.M.'s best interest to return to Plaintiff T.M.'s foster mother 's home. Upon information and belief, he has sent several letters to SCDSS recommending that Plaintiff T.M. remain in Plaintiff T.M.'s foster mother 's care.

### IV.    SCDSS's Patterns and Practices Harm Children, Including Plaintiff.

54.    That Plaintiff realleges paragraphs 1 – 53 as if restated herein verbatim.

55.    The South Carolina Department of Social Services ("SCDSS") is an agency of the State of South Carolina created by the General Assembly of the State of South Carolina. SCDSS is responsible for ensuring that the children in its custody are safe and are receiving adequate care and treatment in accordance with applicable legal standards. S.C. Code Ann. § 43-1-10 (1993); S.C. Code Ann. § 63-7-10(A)(5) (2008).

56.    All intervention by the State has as its primary goal the welfare and safety of the child. S.C. Code Ann. § 63-7-10(A)(5) (2008).

57.    The South Carolina Children's Code aims to establish an effective system of protection of children from injury and harm while living in public and private residential agencies and institutions meant to serve them. S.C. Code Ann. § 63-7-10(B)(5) (2008).

58.    When children must be placed in care away from their homes, the State shall insure that they are protected against any harmful effects resulting from the temporary or permanent inability of parents to provide care and protection for their children. S.C. Code Ann. § 63-7-20(D) (2008).

59.    "Contacts with the child and with others who have knowledge of the child are used: to oversee the safety of the child; to collect information in order to confirm the

environment is safe (i.e. at the time of placement) or to determine that the same safe acceptable conditions remain; to determine that any changes occurring do not pose a threat to child safety. If the child is determined to be unsafe, immediate actions are taken to protect the child, including possible removal from the placement." *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-3 (D.S.C.).

60.     The most fundamental charge of any foster care system is protecting the safety of children in its custody. 45 C.F.R. 1355.34(b)(1)(i)(A).

61.     Child welfare agencies are "responsible for ensuring that children who have been found to be victims of abuse or neglect are protected from further harm. Whether the child is placed in out-of-home care or maintained in the home, the child welfare agency's first concern must be to ensure the safety of the child." *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-4 (D.S.C.).

62.     "Foster care is a temporary substitute care service offered to children who must be separated from their own parents/family for a specific purpose and for a planned period of time. It may take the form of relative placement, foster family care, residential group care, therapeutic foster care, residential treatment, or independent living depending on the needs of the child." *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.

63.     It is a policy that, "[t]he immediate safety and future risk of children must be assessed continually and serves as the foundation for all child protective service and foster care interventions.  Safety and risk assessments must include foster care placements, relative and alternative care givers."  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6. "Selection of a foster care provider, including…therapeutic foster care,… should be based on the child's identified needs and the resources of the foster care provider to meet the child's needs."

*N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.  Safety of placement must

be assessed at, or within 48 hours of placement and ongoing thereafter.  *N.G. v. SCDSS*, Civil

Action No. 10-cv-029730-CMC, dkt. no. 102-6.

64.    SCDSS is required to participate in completing a child's individual treatment

plan, participate in all provider staffing and treatment planning meetings. *N.G. v. SCDSS*, Civil

Action No. 10-cv-029730-CMC, dkt. no. 102-6.

65.    SCDSS identifies and addresses a child's mental health and behavioral health at

the time he enters foster care.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no.

102-6.   The child's mental health and behavioral health are continuously monitored and

recorded as the child's assessment and case plan are updated.  *N.G. v. SCDSS*, Civil Action No.

10-cv-029730-CMC, dkt. no. 102-6.

66.    SCDSS must obtain essential educational, medical, and mental health/behavioral

information regarding a child from parents, relatives, and others in order to meet the immediate

and ongoing needs of the child and that this information is to be shared with the foster

parent/provider.  Information gathered in the child's record includes, but is not limited to:

- Medical, mental health conditions (i.e. critical health conditions, prescribed medications, use of sleep monitors, etc.);
- History of the child;
- The nature of the abuse and/or neglect,
- Behavioral problems, and
- Matters related to educational needs.

*N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.

67.    "As much information as possible is given to the foster care provider by the first

working day after placement."  The agency files/databases should be researched for more

information during the first week and shared with the provider.  When new information is

acquired, the caseworker shall immediately convey the information to the providers.  The

Education and Health Passport (DSS 30245) is also updated.  SCDSS even encourages the meeting of birth parents and foster parents to exchange information regarding a child unless such a meeting would be inappropriate.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.

68.    Accepted professional child welfare standards require that, upon entry into care, the agency must provide a thorough assessment and initial case plan that allows for the appropriate matching of the child with a placement that meets their needs in the least restrictive environment. *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-7 and 156-1 (D.S.C.).

69.    Foster care requires a needs assessment and service planning. *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-3 (D.S.C.).  Service planning includes assessing for safety and risk of abuse and neglect for children in foster care,…and the specific services the child needs while in an out-of-home placement.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.

70.    A comprehensive assessment and case plan is completed when the child enters foster care according to the agency assessment and case plan process.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.  The assessment and plan are updated as circumstances change or every six months.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.

71.    SCDSS has a policy of ongoing case review every month.  There is a policy of evaluating a case every six months.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.

72.    Professional standards require an assessment that considers the following:

- The child's needs and strengths from the perspective of the child, family, and the Department;
- The child's previous history of interventions and the outcome of each;
- Any special condition that might influence the choice of placement or the need for more in-depth diagnostic work;
- The permanency plan for the child and family;
- The services required to meet the identified need; and
- Risks posed by the child and risks to the child

Child Welfare League of America Standards of Excellence for Family Foster Care Services 2.14.

73.    When developing a concurrent plan for permanency, a DSS social worker is required to consider the following information:

- Assess the core problems that brought the child into foster care;
- … Explore underlying history of problems and family needs;
- Include information of family's environment, physical health and psychological factors;

*N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-6.

74.    The CWLA defines child well-being as only being achieved when a child's five universal needs are met. These needs include basic provisions such as "primary and preventive health and mental health care" as well as "*Safety*: Protection from harm" and "*Healing*: Easing the impact of harm." *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-6 (D.S.C.).

75.    The federal government views meeting mental health needs as an essential element of child welfare practice.  *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 157-41 (D.S.C.).

76.     According to SCDSS policy, a child's mental health and behavioral needs should be identified and addressed in both initial and ongoing updates of the child's assessment and case plan. *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-3 (D.S.C.).

77.     SCDSS Policy also dictates that the SCDSS worker must "[m]onitor[] service delivery providers to determine if services are successful in . . . addressing the needs of the child." *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-3 (D.S.C.).

78.     Medicaid defines "therapeutic foster care" as "an intensive treatment program for emotionally disturbed children that incorporates clinical treatment services provided within a supportive foster home setting.  The goal of TFC is to enable a child to overcome emotional, behavioral or psychiatric problems in a highly supportive individualized, and flexible residential placement, thereby helping the child to move to a less intensive foster or group care placement, or to return to the natural home…" *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9.  TFC services are behavioral, psychological, and psychosocial in orientation.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-10.  Therapeutic foster parents (TFPs) are specially recruited and trained in behavioral management and treatment interventions designed to meet the individual needs of the child.  Exhibit 8, p. 2-89.  TFC provider agency clinical staff directly supervise and support the TFPs throughout the child's length of stay.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9.

79.     When a child enters treatment foster care a detailed individual treatment plan is required to be initiated, reviewed, and reformulated by the Lead Clinical Staff working for the agency.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9 and 102-5.  The individual treatment plan (ITP) is a comprehensive plan of care that is formulated by the Lead Clinical Staff (LCS) based on the individual needs of each child.  *N.G. v. SCDSS*, Civil Action

No. 10-cv-029730-CMC, dkt. no. 102-9.  The treatment plan validates the necessity and appropriateness of services, and outlines the service delivery needed to meet identified needs, reduce problem behaviors, and improve overall functioning.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9.  Medicaid requires that the "…treatment plan shall be based upon an assessment of the child's problems and needs in the areas of emotional, behavioral, and skill development.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9. An ITP is not something that can be cut and pasted from a previous child's ITP.  In fact, it "must be individualized for to the child.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9.  A treatment plan must be reviewed at least every ninety days to ensure that services and treatment goals continue to be appropriate to the child's needs, and to assess the child's progress.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9.  It shall be reformulated every 12 months.  *N.G. v. SCDSS*, Civil Action No. 10-cv-029730-CMC, dkt. no. 102-9.

80.    According to the 2010 Child and Family Service Review (CFSR) of SCDSS conducted by the Federal Administration for Children and Families (ACF) of the Department of Health and Human Services (HHS), in almost a quarter of the cases reviewed, the frequency and quality of visits by SCDSS caseworkers were "insufficient to ensure adequate monitoring [of] the child's well-being and promote attainment of case goals." The federal reviewers also determined SCDSS failed to make "diligent efforts to assess and address the risk of harm to the child" in more than 40 percent of the cases reviewed. *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-4 (D.S.C.).

81.    That Defendant SCDSS had notice and knowledge of the 2010 CFSR conducted by ACF and its findings.

82.     That in its 2010 Annual Progress and Services Report, SCDSS stated that it often failed to monitor the medical needs of children in its custody and that those children often did not receive appropriate follow-up and treatment.

83.     That the 2010 federal CFSR of SCDSS conducted by ACF found "a scarcity of key services, such as psychological evaluations and mental health . . . treatment services."  In its 2003 CFSR of SCDSS, ACF found the same problem: "[t]he State had service gaps in key areas (particularly . . . quality mental health services) that affected the achievement of safety and permanency for children."

84.     That Defendants SCDSS had notice and knowledge of the SCDSS 2010 Annual Progress and Services Report and its findings, and the 2010 and 2003 CFSR reports and findings.

85.     That on October 1, 2014 the Legislative Audit Counsel [LAC]of the South Carolina General Assembly issued "A Review of Child Welfare Services at the Department of Social Services."[1]

86.     That the South Carolina General Assembley has exempted employees of the South Carolina Department of Social Services from licensure as social workers under the assumption that they would be "specifically trained to perform these services and the employee is not identified in any way as a social worker."  S.C. Code Ann. § 40-63-290(5).

87.     That there is no requirement that "DSS caseworkers have college degrees in social work or a behavioral science."[2]

---

[1] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, last accessed October 9, 2014.
[2] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 7, last accessed October 9, 2014.

88.    That "DSS has unclear policies regarding training and certification for caseworkers after they have been hired.  The department also has no central records that document whether caseworkers have been trained and certified."[3]

89.    That SCDSS "takes as long as nine months to hire and train a new child welfare caseworker.'"[4]

90.    That "[C]aseloads managed by child welfare caseworkers are excessive, reducing the amount of attention that can be given to each child."[5]

91.    That "DSS does not have a systemic process for allocating child welfare staff among its state, regional, and county offices."[6]

92.    That SCDSS "does not have a structured system for minimizing turnover amond child welfare workers and county directors."[7]

93.    Other District Courts have ordered that case workers "shall have a bachlor's degree in social work or a related human services field."  *Dwayne B. v. Rick Snyder*, Civil Action No. 2:06-cv-13548, dkt. no. 148, p. 14 (E.D. Mich. 2008).

94.    The Connecticut Department of Children and Youth Services entered into an agreement to require that the "preferred qualifications for staff are:  (a) A Bachelors Degree; and (b) Experience in a human services agency, hospital, or similary setting."[8]

---

[3] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 7, last accessed October 9, 2014.
[4] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 7, last accessed October 9, 2014.
[5] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 7, last accessed October 9, 2014.
[6] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 7, last accessed October 9, 2014.
[7] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 7, last accessed October 9, 2014.

95.    The LAC made a recommendation that SCDSS "…require that newly-hired child welfare caseworkers have at least:

- A bachelor's degree in social work; or
- A bachelor's degree in behavioral science; or
- A bachelor's degree in another field with a minimum number of years of relevant experience.[9]

96.    The LAC found that SCDSS "…does not maintain central records of the training and certification received by caseworkers, nor does it maintain central records of continuing education…" and that "…counties also d[o] not maintain a listing of certified caseworkers."[10]

97.    The LAC also found that, "…several county directors stated that DSS did not consistently provide county staff with training before the state office implemented a new policy or program, increasing the likelihood that counties will misunderstand or not adhere to agency requirements."[11]

98.    The LAC concluded that SCDSS takes an average of "almost nine months to hire and train new caseworkers."[12]

99.    Since 1985, the LAC found that SCDSS did not and continues not to have:

- Maximun caseload standards for its child welfare caseworkers.
- Formal methodology for calculating caseloads.
- Policy that requires caseloads be approximately equal from county to county.

---

[8] See *Juan F. v. John G. Rowland*, Civil Action No. H-89-859 (AHN), December 1, 1992 (D. Conn. 1992); http://www.childrensrights.org/wp-content/uploads/2008/06/1991-1-7_ct_consentdecree.pdf, p. 51 and 61.
[9] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 13, last accessed October 9, 2014.
[10] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 14, last accessed October 9, 2014.
[11] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 14, last accessed October 9, 2014.
[12] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 20, last accessed October 9, 2014.

100.    The LAC learned in its investigation that excessive caseloads reduce "…the ability of caseworkers to investigate and prevent child abuse and neglect."[13]

101.    The LAC reported that 52.7% of SCDSS case workers "had combined caseloads that exceeded the Child Welfare League of America standards; 38.5% of the case workers had caseloads that exceeded the standards by 50% or more, 21.9% of caseworkers had caseloads that exceeded the standards by 100% or more, and 11.3% of caseworkers had caseloads that exceeded the standards by 150% or more."[14]

102.    The LAC also reported that 57.8% of the county caseworkers had "combined caseloads that exceeded DSS standards.  38.5% of the caseworkers had caseloads that exceeded the standards by 50% of more, 21.9% of caseworkers had caseloads that exceeded the standards by 100% or more, and 11.3% of caseworkers had caseloads that exceeded the standards by 150% or more."[15]

103.    Specifically, LAC found that Richland County social workers exceeded CWLA standards by 54.20% and exceeded SCDSS standards by 54.20%.[16]

104.    Despite LAC criticism of SCDSS since 1985 regarding personnel management and reallocation of staff, it took rampant media exposure for the brutal death of four-year-old Robert Guinard, Jr. before SCDSS "temporarily reallocated 66 staff to Richland County

---

[13] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 21, last accessed October 9, 2014.

[14] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 23, last accessed October 9, 2014.

[15] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 23, last accessed October 9, 2014.

[16] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 25, last accessed October 9, 2014.

DSS…require[ing] 54 of the workers to dedicate a portion of their workweeks to Richland County, while continuing to perform their regularly, assigned duties."[17]

106.    The director of the Abbeville County Department of Social Services, Merry Eve Poole, testified that, "when there is an allegation that a child was sexually abused in care, SCDSS will have a forensic interview done and, based on those recommendations, SCDSS will determine whether further medical care is necessary." *Doe v. Haley*, Civil Action No. 8:13-cv-01772-GRA, dkt. no. 154-17 (D.S.C.).

**First Cause of Action**
**(Failure to Protect – First Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

106.    That Plaintiff realleges paragraphs 1 – 105 as if restated herein verbatim.

107.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

108.    That SCDSS and its employees and agents, particularly Defendant Irene Williams, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

109.    Defendant Irene Williams was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Irene Williams was Plaintiff T.M.'s social worker from

---

[17] See http://lac.sc.gov/LAC_Reports/2014/Documents/DSS.pdf, pg. 27, last accessed October 9, 2014.

August 13, 2009 until December 10, 2012.  Defendant Irene Williams, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Child Protective Services social workers, or both.  Proper treatment was not provided to Plaintiff T.M.

110.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

111.    Plaintiff asks the Court to award damages and costs of this suit.

## Second Cause of Action
### Constitutional Violation – First Occurrence – Violation of Fourteenth Amendment Right to Adequate Care

112.    That Plaintiff realleges paragraphs 1 – 111 as if restated herein verbatim.

113.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

114.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

115.    That Defendant Irene Williams was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Irene Williams was Plaintiff T.M.'s social worker from August 13, 2009 until December 10, 2012.  Defendant Irene Williams, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Child Protective Services social workers, or both.  Proper treatment was not provided to Plaintiff T.M.

116.    SCDSS, through its unconstitutional policies and procedures, and Irene Williams, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

117.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

118.    That Defendants SCDSS and Irene Williams were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

119.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Irene William's constitutional violations.

120.    That these failures were part of the SCDSS's and Irene William's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

121.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.

**Third Cause of Action**
**(Failure to Protect – Second Occurrence – Gross Negligence in Failing to Provide**
**Treatment Under the South Carolina Tort Claims Act)**

122.    That Plaintiff realleges paragraphs 1 – 121 as if restated herein verbatim.

123.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

124.    That SCDSS and its employees and agents, particularly Defendant Nicole Scott, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

125.    Defendant Nicole Scott was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Nicole Scott was Plaintiff T.M.'s social worker from March 11, 2011 until July 1, 2014.  Defendant Nicole Scott, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both.  Defendant Nicole Scott also conducted an indepth review of Plaintiff T.M.'s file in order to determine her adoptability and to write a thorough Adoption Summary to present to prospective adoptive parents.  Proper treatment was not provided to T.M.

126.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

127.    Plaintiff asks the Court to award damages and costs of this suit.

### Fourth Cause of Action
**Constitutional Violation – Second Occurrence – Violation of Fourteenth Amendment
Right to Adequate Care**

128.   That Plaintiff realleges paragraphs 1 – 127 as if restated herein verbatim.

129.   That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

130.   That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

131.   That Defendant Nicole Scott was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Nicole Scott was Plaintiff T.M.'s social worker from March 11, 2011 until July 1, 2014.  Defendant Nicole Scott, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both.  Defendant Nicole Scott also conducted an indepth review of Plaintiff T.M.'s file in order to determine her adoptability and to write a thorough Adoption Summary to present to prospective adoptive parents.  Proper treatment was not provided to T.M.

132.   SCDSS, through its unconstitutional policies and procedures, and Nicole Scott, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

133.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

134.    That Defendants SCDSS and Nicole Scott were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

135.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Nicole Scott's constitutional violations.

136.    That these failures were part of the SCDSS's and Nicole Scott's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

137.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.


**Fifth Cause of Action**
**(Failure to Protect – Third Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

138.    That Plaintiff realleges paragraphs 1 – 137 as if restated herein verbatim.

139.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

140.    That SCDSS and its employees and agents, particularly Defendant April Fogle, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

141.    Defendant April Fogle was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant April Fogle was Plaintiff T.M.'s social worker from December 10, 2012 until January 18, 2013.  Defendant April Fogle, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

142.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

143.    Plaintiff asks the Court to award damages and costs of this suit.

## Sixth Cause of Action
### Constitutional Violation – Third Occurrence – Violation of Fourteenth Amendment Right to Adequate Care

144.    That Plaintiff realleges paragraphs 1 – 143 as if restated herein verbatim.

145.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

146.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

147.    That Defendant April Fogle was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant April Fogle was Plaintiff T.M.'s social worker from December 10, 2012 until January 18, 2013.  Defendant April Fogle, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both.  Proper treatment was not provided to T.M.

148.    SCDSS, through its unconstitutional policies and procedures, and April Fogle, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

149.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

150.    That Defendants SCDSS and April Fogle were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious.  They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

151.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and April Fogle's constitutional violations.

152.     That these failures were part of the SCDSS's and April Fogle's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

153.     That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.

**Seventh Cause of Action**
**(Failure to Protect – Fourth Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

154.     That Plaintiff realleges paragraphs 1 – 153 as if restated herein verbatim.

155.     That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

156.     That SCDSS and its employees and agents, particularly Defendant Lalita Garnett, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

157.     Defendant Lalita Garnett was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Lalita Garnett was Plaintiff T.M.'s social worker from January 18, 2013 until January 23, 2014.  Defendant Lalita Garnett, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

158.     That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

159.     Plaintiff asks the Court to award damages and costs of this suit.

**Eighth Cause of Action**
**Constitutional Violation – Fourth Occurrence – Violation of Fourteenth Amendment**
**Right to Adequate Care**

160.     That Plaintiff realleges paragraphs 1 – 159 as if restated herein verbatim.

161.     That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

162.     That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

163.     That Defendant Lalita Garnett was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Lalita Garnett was Plaintiff T.M.'s social worker from January 18, 2013 until January 23, 2014.  Defendant Lalita Garnett, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both.  Proper treatment was not provided to T.M.

164.     SCDSS, through its unconstitutional policies and procedures, and Lalitta Garnett, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults

and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

165.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

166.    That Defendants SCDSS and Lalitta Garnett were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

167.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Lalitta Garnett's constitutional violations.

168.    That these failures were part of the SCDSS's and Lalitta Garnett's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

169.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.


### Ninth Cause of Action
**(Failure to Protect – Fifth Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

170.    That Plaintiff realleges paragraphs 1 – 169 as if restated herein verbatim.

171.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is

liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

172.    That SCDSS and its employees and agents, particularly Defendant Lawanda Greggs, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

173.    Defendant Lawanda Greggs was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Lawanda Greggs was Plaintiff T.M.'s social worker from January 23, 2014 until May 19, 2014.  Defendant Lawanda Greggs, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

174.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

175.    Plaintiff asks the Court to award damages and costs of this suit.


**Tenth Cause of Action**
**Constitutional Violation – Fifth Occurrence – Violation of Fourteenth Amendment Right to Adequate Care**

176.    That Plaintiff realleges paragraphs 1 – 175 as if restated herein verbatim.

177.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

178.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

179.    That Defendant Lawanda Greggs was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Lawanda Greggs was Plaintiff T.M.'s social worker from January 23, 2014 until May 19, 2014.  Defendant Lawanda Greggs, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both.  Proper treatment was not provided to T.M.

180.    SCDSS, through its unconstitutional policies and procedures, and Lalitta Garnett, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

181.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

182.    That Defendants SCDSS and Lawanda Greggs were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

183.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Lawanda Greggs's constitutional violations.

184.    That these failures were part of the SCDSS's and Lawanda Greggs's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

185.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.


### Eleventh Cause of Action
**(Failure to Protect – Sixth Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

186.    That Plaintiff realleges paragraphs 1 – 185 as if restated herein verbatim.

187.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

188.    That SCDSS and its employees and agents, particularly Defendant Alex Wright, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

189.    Defendant Alex Wright was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Alex Wright was Plaintiff T.M.'s social worker from May 19, 2014 until August 18, 2014.  Defendant Alex Wright, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaintiff T.M.

was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

190.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

191.    Plaintiff asks the Court to award damages and costs of this suit.

**Twelfth Cause of Action**
**Constitutional Violation – Sixth Occurrence – Violation of Fourteenth Amendment Right to Adequate Care**

192.    That Plaintiff realleges paragraphs 1 – 175 as if restated herein verbatim.

193.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

194.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

195.    That Defendant Alex Wright was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Alex Wright was Plaintiff T.M.'s social worker from May 19, 2014 until August 18, 2014.  Defendant Alex Wright, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

196.    SCDSS, through its unconstitutional policies and procedures, and Lalitta Garnett, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff

T.M.'s constitutional right to safety and well-being so as to shock the conscience. They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

197.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

198.    That Defendants SCDSS and Alex Wright were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

199.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Alex Wright's constitutional violations.

200.    That these failures were part of the SCDSS's and Alex Wright's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

201.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.


**Thirteenth Cause of Action**
**(Failure to Protect – Seventh Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**


202.    That Plaintiff realleges paragraphs 1 – 201 as if restated herein verbatim.

203.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

204.    That SCDSS and its employees and agents, particularly Defendant Shavonna Gibson, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

205.    Defendant Shavonna Gibson was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Shavonna Gibson was Plaintiff T.M.'s social worker from July 1, 2014 until the present.  Defendant Shavonna Gibson, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

206.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

207.    Plaintiff asks the Court to award damages and costs of this suit.


**Fourteenth Cause of Action**
**Constitutional Violation – Seventh Occurrence – Violation of Fourteenth Amendment**
**Right to Adequate Care**

208.    That Plaintiff realleges paragraphs 1 – 207 as if restated herein verbatim.

209.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

210.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

211.    That Defendant Shavonna Gibson was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Shavonna Gibson was Plaintiff T.M.'s social worker from July 1, 2014 until the present.  Defendant Shavonna Gibson, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both.  Proper treatment was not provided to T.M.

212.    SCDSS, through its unconstitutional policies and procedures, and Shavonna Gibson, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

213.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

214.    That Defendants SCDSS and Shavonna Gibson were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious.  They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody,

including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

215.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Shavonna Gibson's constitutional violations.

216.    That these failures were part of the SCDSS's and Shavonna Gibson's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

217.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.


**Fifteenth Cause of Action**
**(Failure to Protect – Eighth Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

218.    That Plaintiff realleges paragraphs 1 – 217 as if restated herein verbatim.

219.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

220.    That SCDSS and its employees and agents, particularly Defendant Mary Buskey, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

221.    Defendant Mary Buskey was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Mary Buskey was Plaintiff T.M.'s social worker from

August 18, 2014 until September 17, 2014.  Defendant Mary Buskey, upon receiving Plaintiff

T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that

Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing

Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or

both. Proper treatment was not provided to T.M.

222.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and

proximate result of SCDSS's and its employees' and agents' tortuous acts.

223.    Plaintiff asks the Court to award damages and costs of this suit.

**Sixteenth Cause of Action**
**Constitutional Violation – Eighth Occurrence – Violation of Fourteenth Amendment Right**
**to Adequate Care**

224.    That Plaintiff realleges paragraphs 1 – 223 as if restated herein verbatim.

225.    That the Fourteenth Amendment to the United States Constitution guarantees the

right of all children in custody to safety and well-being.

226.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color

of state law are liable for violating constitutional rights.

227.    That Defendant Mary Buskey was professionally trained by SCDSS to provide

social services to Plaintiff T.M.  Defendant Mary Buskey was Plaintiff T.M.'s social worker

from August 18, 2014 until September 17, 2014.  Defendant Mary Buskey, upon receiving

Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent

knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through

reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social

workers, or both.  Proper treatment was not provided to T.M.

228.     SCDSS, through its unconstitutional policies and procedures, and Mary Buskey, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

229.     That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

230.     That Defendants SCDSS and Mary Buskey were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

231.     That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Mary Buskey's constitutional violations.

232.     That these failures were part of the SCDSS's and Mary Buskey's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

233.     That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.

**Seventeenth Cause of Action**
**(Failure to Protect – Ninth Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

234.    That Plaintiff realleges paragraphs 1 – 233 as if restated herein verbatim.

235.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

236.    That SCDSS and its employees and agents, particularly Defendant Michelle Ingram-Smith, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

237.    Defendant Michelle Ingram-Smith was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Michelle Ingram-Smith was Plaintiff T.M.'s social worker from September 17, 2014 until October 12, 2014.  Defendant Michelle Ingram-Smith, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

238.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

239.    Plaintiff asks the Court to award damages and costs of this suit.

## Eighteenth Cause of Action
### Constitutional Violation – Ninth Occurrence – Violation of Fourteenth Amendment Right to Adequate Care

240.    That Plaintiff realleges paragraphs 1 – 239 as if restated herein verbatim.

241.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

242.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

243.    That Defendant Michelle Ingram-Smith was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Michelle Ingram-Smith was Plaintiff T.M.'s social worker from September 17, 2014 until October 12, 2014.  Defendant Michelle Ingram-Smith, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both.  Proper treatment was not provided to T.M.

244.    SCDSS, through its unconstitutional policies and procedures, and Michelle Ingram-Smith, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

245.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

246.    That Defendants SCDSS and Michelle Ingram-Smith were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious.  They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

247.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Michelle Ingram-Smith's constitutional violations.

248.    That these failures were part of the SCDSS's and Michelle Ingram-Smith's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

249.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.

**Nineteenth Cause of Action**
**(Failure to Protect – Tenth Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

250.    That Plaintiff realleges paragraphs 1 – 249 as if restated herein verbatim.

251.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

252.    That SCDSS and its employees and agents, particularly Defendant Anna Jones, acting within the scope of their employment, were willful, wanton, careless, grossly negligent,

and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

253.    Defendant Anna Jones was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Anna Jones was Plaintiff T.M.'s social worker from October 12, 2014 until the present.  Defendant Anna Jones, upon receiving Plaintiff T.M.'s case and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

254.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

255.    Plaintiff asks the Court to award damages and costs of this suit.


**Twentieth Cause of Action**
**Constitutional Violation – Tenth Occurrence – Violation of Fourteenth Amendment Right to Adequate Care**

256.    That Plaintiff realleges paragraphs 1 – 255 as if restated herein verbatim.

257.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

258.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

259.    That Defendant Anna Jones was professionally trained by SCDSS to provide social services to Plaintiff T.M.  Defendant Anna Jones was Plaintiff T.M.'s social worker from October 12, 2014 until the present.  Defendant Anna Jones, upon receiving Plaintiff T.M.'s case

47

and while investigating Plaintiff T.M.'s case, gained independent knowledge that Plaintniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through staffing with SCDSS Foster Care Services social workers, or both.  Proper treatment was not provided to T.M.

260.    SCDSS, through its unconstitutional policies and procedures, and Anna Jones, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

261.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

262.    That Defendants SCDSS and Anna Jones were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious.  They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

263.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Anna Jones's constitutional violations.

264.    That these failures were part of the SCDSS's and Anna Jones's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

265.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.

### Twenty-First Cause of Action
**(Negligent Supervision – Eleventh Occurrence – Gross Negligence in Failing to Supervise SCDSS Social Workers Under the South Carolina Tort Claims Act)**

266.    That Plaintiff realleges paragraphs 1 – 265 as if restated herein verbatim.

267.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

268.    That SCDSS and its employees and agents, particularly Defendant Melissa Graham, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

269.    Defendant Melissa Graham was professionally trained by SCDSS to provide social services to Plaintiff T.M.  As a supervisor, she was responsible for ensuring that each and every social worker read Plaintiff T.M.'s case file, created a treatment plan, and provide proper and prompt mental health services.  Defendant Melissa Graham, conducted a staffing in this matter with each social worker assigned to provide services to Plaintiff T.M.  Each social worker supervised by Melissa Graham gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

270.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

271.    Plaintiff asks the Court to award damages and costs of this suit.

### Twenty-Second Cause of Action
**Constitutional Violation – Eleventh Occurrence – Violation of Fourteenth Amendment Right to Adequate Care**

272.    That Plaintiff realleges paragraphs 1 – 271 as if restated herein verbatim.

273.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

274.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

275.    Defendant Melissa Graham was professionally trained by SCDSS to provide social services to Plaintiff T.M.  As a supervisor, she was responsible for ensuring that each and every social worker read Plaintiff T.M.'s case file, created a treatment plan, and provide proper and prompt mental health services.  Defendant Melissa Graham, conducted a staffing in this matter with each social worker assigned to provide services to Plaintiff T.M.  Each social worker supervised by Melissa Graham gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

276.    SCDSS, through its unconstitutional policies and procedures, and Melissa Graham, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They

had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

277.     That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

278.     That Defendants SCDSS and Melissa Graham were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

279.     That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Melissa Graham's constitutional violations.

280.     That these failures were part of the SCDSS's and Melissa Graham's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

281.     That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.

**Twenty-Third Cause of Action**
**(Negligent Supervision – Twelfth Occurrence – Gross Negligence in Failing to Supervise SCDSS Social Workers Under the South Carolina Tort Claims Act)**

282.     That Plaintiff realleges paragraphs 1 – 281 as if restated herein verbatim.

283.    That under the South Carolina Tort Claims Act, § 15-78-10 *et seq.* of the Code of Laws of South Carolina 1976, as amended, and the Common Law of South Carolina, SCDSS is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment.

284.    That SCDSS and its employees and agents, particularly Defendant Melissa Graham, acting within the scope of their employment, were willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide Plaintiff T.M. with proper and prompt mental health treatment.

285.    Defendant Melissa Graham was professionally trained by SCDSS to provide social services to Plaintiff T.M.  As a supervisor, she was responsible for ensuring that each and every social worker read Plaintiff T.M.'s case file, created a treatment plan, and provide proper and prompt mental health services.  Defendant Melissa Graham, conducted a staffing in this matter with each social worker assigned to provide services to Plaintiff T.M.  Each social worker supervised by Melissa Graham gained independent knowledge that Plaitniff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

286.    That Plaintiff T.M. suffered injuries set out in this Complaint as the direct and proximate result of SCDSS's and its employees' and agents' tortuous acts.

287.    Plaintiff asks the Court to award damages and costs of this suit.

### Twenty-Fourth Cause of Action
**Constitutional Violation – Twelfth Occurrence – Violation of Fourteenth Amendment Right to Adequate Care**

288.    That Plaintiff realleges paragraphs 1 – 287 as if restated herein verbatim.

289.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and well-being.

290.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

291.    Defendant Yvonne Wilson was professionally trained by SCDSS to provide social services to Plaintiff T.M.  As a supervisor, she was responsible for ensuring that each and every social worker read Plaintiff T.M.'s case file, created a treatment plan, and provide proper and prompt mental health services.  Defendant Yvonne Wilson, conducted a staffing in this matter with each social worker assigned to provide services to Plaintiff T.M.  Each social worker supervised by Yvonne Wilson gained independent knowledge that Plaintiff T.M. was in need of proper and prompt mental health treatment through reviewing Plaintiff T.M.'s case file, through a staffing with SCDSS Foster Care Services social workers, or both. Proper treatment was not provided to T.M.

292.    SCDSS, through its unconstitutional policies and procedures, and Yvonne Wilson, a state actor acting under color of South Carolina Law, were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and well-being so as to shock the conscience.  They had notice of Plaintiff T.M.'s need for mental health treatment after the attacks and sexual assaults and they had notice of the danger in failing to provide there services to her, yet they chose to ignore these dangers notwithstanding their notice of them.

293.    That these failures were part of these Defendants' policy, custom, pattern, or practice of violating the constitutional rights of children in their care.

294.    That Defendants SCDSS and Yvonne Wilson were deliberately indifferent to Plaintiff T.M.'s constitutional right to safety and general well-being so as to shock the conscious. They had notice and knowledge of the dangers created by SCDSS's policy, custom, pattern, or practice of failing to provide adequate mental health treatment to children in SCDSS custody, including children like Plaintiff T.M. who were victims of attacks and sexual assaults, yet they chose to ignore these dangers notwithstanding the notice.

295.    That Plaintiff T.M. suffered the injuries set out in this complaint as the direct and proximate result of SCDSS's and Yvonne Wilson's constitutional violations.

296.    That these failures were part of the SCDSS's and Yvonne Wilson's policy, custom, pattern, or practice of violating the Fourteenth Amendment rights of children in their care.

297.    That Plaintiff asks the Court to award damages, punitive damages, attorneys' fees and costs of this suit.


### Twenty-Fifth Cause of Action
**(Failure to Protect – Thirteenth Occurrence – Gross Negligence in Failing to Provide Treatment Under the South Carolina Tort Claims Act)**

298.    That Plaintiff realleges paragraphs 1 – 297 as if restated herein verbatim.

299.    That under the South Carolina Solicitation of Charitable Funds Act, § 33-56-10 et seq. of the Code of Law of South Carolina 1976, as amended, and the Common Law of South Carolina, SCYAP is liable for its tortious acts and the tortious acts of its employees and agents performed in the scope of their employment. SCYAP's employees are also liable for their own

tortious acts.

300.    That Defendant SCYAP and its employee, Kim Long, acting in the scope of their employment, were negligent, willful, wanton, careless, grossly negligent, and failed to exercise even slight care in failing to provide T.M. with proper and prompt mental health treatment after she was attacked and sexually assaulted.

301.    That Doe suffered the injuries set out in this Complaint as the direct and proximate result of SCYAP's and Kim Long's tortious acts.

302.    That Doe's losses under this Cause of Action proximately flow from acts of gross negligence different (as defined by Section 15-78-30(g) of the Code of Laws of South Carolina 1976, as amended) from SCYAP's and its employees' and agents' tortuous acts.

303.    Plaintiff asks the Court to award damages, punitive damages, and costs of this suit.

## Twenty-Sixth Cause of Action
### Constitutional Violation – Thirteenth Occurrence – Violation of Fourteenth Amendment Right to Adequate Care

304.    That Plaintiff realleges paragraphs 1 – 303 as if restated herein verbatim.

305.    That the Fourteenth Amendment to the United States Constitution guarantees the right of all children in custody to safety and general well-being.

306.    That under 42 U.S.C. § 1983, persons (including corporations) acting under color of state law are liable for violating constitutional rights.

307.    That from February 2014 through the present, the SCYAP and Kim Long, state actors acting under color of South Carolina Law, were deliberately indifferent to T.M.'s constitutional right to safety and general well-being so as to shock the conscience. SCYAP and

Kim Long had notice of T.M.'s need for mental health treatment after the attacks and sexual assaults she had suffered and they had notice of the danger in failing to provide these services to her, yet SCYAP and SCYAP chose to ignore these dangers notwithstanding their notice of them

308.    That these failures were part of the SCYAP's and Kim Long's policy, custom, pattern, or practice of violating the constitutional rights of children in their care

309.    That Doe suffered the injuries set out in this Complaint as the direct and proximate result of the SCYAP's and Kim Long's constitutional violations

310.    Plaintiff asks the Court for actual damages, punitive damages, and attorney's fees and costs.

**WHEREFORE**, Plaintiff requests the Court enter judgment in his favor for:

A. Damages in the appropriate amount;

B. Punitive damages as are appropriate;

C. Attorneys' fees, costs, expenses, and disbursements of this action;

D. Interest; and

E. Such other and further relief as is just and proper.

Dated: Camden, South Carolina
August 8, 2015

By:   s//Robert J. Butcher

Robert J. Butcher
Deborah J. Butcher
S.C. Bar No. 74722
Fed Bar No. 9767
The Camden Law Firm, PA
509 Walnut Street
Camden, South Carolina 29020
P.O. Box 610
Camden, South Carolina 29021
Telephone:    (803) 432-7599
Facsimile:    (803) 432-7499
rbutcher@camdensc-law.com

Attorneys for Plaintiff T.M.