IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| T.M., by and through her guardian ad litem, John D. Elliott,<br><br>        Plaintiff,<br><br>v.<br><br>South Carolina Department of Social Services (SCDSS), Irene Williams, April Fogle, Lalita Garnett, Lawanda Greggs, Alex Wright, Mary Buskey, Michelle Ingram-Smith, Anna Jones, Nicole Scott, Melissa Graham, Yvonne Wilson, Shavonna Gibson, South Carolina Youth Advocate Program, Inc., and Kim Long;<br><br>        Defendants. | Civil Action No: 3:15-cv-02084-TLW<br><br><br>**REPLY TO DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT** |

  T.M., by and through her guardian ad litem, John D. Elliott, files this reply to South Carolina Youth Advocate Program's response in opposition to Plaintiff's motion to amend. Dkt. No. 22 and 25.

  **I. Expert Affidavit.**

  This is a lawsuit against a SCDSS, its employees, a private social services agency, and its employees. These are human services workers. In no way has a professional counselor, psychologist, marriage and family therapist, physician, nurse, hospital or medical practice been named in this suit or in the proposed amended complaint. See Dkt. No. 13, *2-5, ¶ 4-17; Dkt. No. 22-1, 2-5, ¶ 4-18.

  Yet, Defendants SCYAP and Kim Long attempt to shoehorn this case into the strict confines of the South Carolina Frivolous Proceedings Sanctions Act, S.C. Code Ann. § 15-36-100, even though nothing complained of by Plaintiffs in her complaint fit into what would be

part and parcel to the practice or malpractice of a professional counselor, psychologist, and/or marriage and family therapist.

If any of the allegations alleged that SCYAP and its social workers provided for or worked in the capacity of some type of counselor or therapist, Defendants' argument may have some traction. A cursory review of SCYAP's web page shows that SCYAP does not provide the therapy or counseling envisioned in S.C. Code Ann. § 15-36-100. In fact, Defendant SCYAP describes therapeutic foster care as:

> Therapeutic foster parents receive intensive training prior to becoming licensed and throughout their tenure as therapeutic foster parents so that they can meet the needs of youth with complex needs and who require a higher level of supervision, structure and support than those served through regular or "traditional" foster care. In Therapeutic Foster Care, SCYAP assigns a caseworker (we call them Treatment Coordinators) to each therapeutic foster parent to provide support, guidance and training and to assist with the case management needs of the youth. Therapeutic foster parents become part of the youth's treatment team and provide treatment services/interventions (such as skill building) to the youth. Because the needs of the youth in therapeutic foster care are greater and the expectations of the therapeutic foster parent is higher than those in traditional or "regular" foster care, the reimbursement to therapeutic foster parents is also higher than traditional or "regular" foster care.
> TFC FAQs,
> https://www.scyap.com/ProgramServices/TherapeuticFosterCare/TFCFAQs.aspx, last accessed November 29, 2015 at 10:57 p.m.

Again, social workers and agencies who provide human services, such as the South Carolina Department of Social Services, SCYAP, and their caseworkers were not specifically listed in S.C. Code Ann. § 15-36-100 while many specific licensed professions were granted this tort reform. These professionals include attorneys, CPAs, surveyors, respiratory therapists, and veterinarians.

Plaintiff directs the Court's attention to the South Carolina Supreme Court's discussion of statutory construction when reviewing S.C. Code Ann. § 15-36-100:

> "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). "When

> a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id*. In interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id*. at 499, 640 S.E.2d at 459. Further, "the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006).
>
> "If the statute is ambiguous ... courts must construe the terms of the statute." *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011) (citation omitted). The statutory language must be construed in light of the intended purpose of the statute. Id. This Court will not construe a statute in a way which leads to an absurd result or renders it meaningless. See *Lancaster Cnty. Bar Ass'n v. S.C. Comm'n on Indigent Def.*, 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008) ("In construing a statute, this Court will reject an interpretation when such an interpretation leads to an absurd result that could not have been intended by the legislature.").
> *Ranucci v. Crain*, 409 S.C. 493, 500-501, 763 S.E.2d 189, (2014).

Defendants negligence and constitutional violations are more akin to a prison guard or jail employee failing to provide for treatment, services, care, and safety. And that is exactly what Plaintiff complains of in her amended complaint. It would be absurd, and it would also make every action of every human services worker employed by DSS, DHEC, DDSN, and school district a malpractice case subject to these statutory provisions. There was a reason why social workers and case workers were not included in the statute.

Plaintiff would like to direct the Court's attention to two very similar cases alleging social worker negligence, one of which was removed to the District Court last week, where SCYAP did not present this unique argument to the Court. See 3:15-cv-04670-MGL and 3:14-cv-02399-MGL.

Defendants' argument is quite novel and very unique, but it asks the Court to improperly expand the statute beyond its limited scope.

**II.  42 U.S.C. § 1983 Claims.**

3

Just like above, Plaintiff would like to direct the Court's attention to two very similar cases alleging substantive due process violations by a private social worker and agency, one of which was removed to the District Court last week, where SCYAP did not present these arguments to the Court. See 3:15-cv-04670-MGL and 3:14-cv-02399-MGL.

**1. SCYAP and Kim Long are state actors.**

The State of South Carolina provides the necessary function of foster care and it is the only entity in the state that provides such a function. Dkt. No. 22-1, *12. Defendants SCYAP and Kim Long, as an employee of SCYAP, contracted to perform these functions which are normally carried out by the state. Dkt. No. 22-1, *12-13. These services are highly regulated by SCDSS, the South Carolina Department of Administration, and the South Caorlina Department of Health and Human Services. Dkt. No. 22-1, *13.

Plaintiff has certainly asserted enough factual information to allege that the Defendants are state actors. SCYAP's argument that Plaintiff cannot establish that it acted under color of state law, and therefore it is not liable under Section 1983, should be rejected. To the contrary, governing law and the Plaintiff's facts in her proposed Second Amended Complaint demonstrate that SCYAP and Kim Long were state actors because it took on the traditionally and exclusively public function of ensuring that the day-to-day care of T.M. met constitutional standards of safety and adequate treatment.

Under 42 U.S.C. § 1983, anyone who "under color of" any state law causes another person to be deprived of his constitutional rights is liable to the injured person. As set forth below, under applicable case law, Plaintiff has established sufficient facts to prove that the SCYAP Defendants were acting under color of state law sufficient to impose liability under Section 1983.

4

The scope of Section 1983 and the Fourteenth Amendment "cannot be a simple line between States and people operating outside formally governmental organizations." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). For this reason, a nominally private actor is a state actor within the meaning of Section 1983 and the Fourteenth Amendment where "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *see Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (holding that the color of law analysis under Section 1983 and the state action analysis under the Fourteenth Amendment are identical).

The Supreme Court has found nominally private actors to be acting under color of state law where, like here, the actor is engaged in a traditionally exclusive public function. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 55-56 (1988). *See also Jackson*, 419 U.S. at 353. "'[O]ne of the paradigmatic means by which a private party becomes subject to section 1983 is through the government's conferral upon that party of what is, at core, sovereign power . . . .'" *U.S. v. Day*, 591 F.3d 679, 687 (4th Cir. 2010) (quoting *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 354 (4th Cir. 2003)). This transfer of sovereign power occurs when a nominally private entity "voluntarily assumes" "an affirmative obligation" of the State under the Constitution.[1] Here, SCYAP and Kim Long were state actors when they voluntarily assumed South Carolina's

---

[1] *Conner v. Donnelly*, 42 F.3d 220, 226 (4th Cir. 1994) (holding that a private physician is a state actor when he voluntarily assumes the state's obligation to provide medical care to inmates); *West*, 487 U.S. at 55 (same); *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55 (1999) (summarizing *West*: "the State was constitutionally obligated to provide medical treatment to injured inmates, and the delegation of that traditionally exclusive public function to a private physician gave rise to a finding of state action").

5

affirmative duty to provide T.M., an abused and neglected child involuntarily placed into state custody in foster care, with a safe placement and adequate treatment.[2]

When South Carolina takes a child into custody, it takes on a non-delegable duty to keep that child safe and provide him with adequate treatment. *Johnson*, 597 F.3d at 175. T.M. was taken into foster care custody on July 20, 2000. SCDSS placed T.M. with SCYAP, where she was not provided psychological or medical treatment. State regulations allowed SCYAP to choose whether or not to take a child into its care. They also allowed SCYAP to discharge its foster children. Under SCYAP's license and contract with the State, SCYAP was required to ensure that T.M. was safe and receiving adequate treatment on a daily basis.

SCYAP also had a responsibility to meet T.M.'s basic safety and health care needs, to provide adequate supervision at all times, to carefully observe and report foster children's behaviors, and to provide therapeutic foster care. As stated above in the facts, they were required to create and implement treatment plans and investigate their past behaviors and mental health issues when they created these treatment plans. They failed to do this basic task. These obligations demonstrate that SCYAP voluntarily assumed the State's duty to provide constitutionally adequate care to the boys' residing at its facility.

In *Conner v. Donnelly*, the Fourth Circuit specifically applied the *West* analysis to claims brought under Section 1983 against a nominally private party. 42 F.3d 220 (4th Cir. 1994). *Conner* involved the delivery of medical treatment by a private doctor to an inmate in state prison. In *Conner*, like here, the State had "a constitutional duty" to care for the plaintiff while he

---

[2] Defendants incorrectly cite *Milburn ex rel. Milburn v. Anne Arundel County Department of Social Services*, 871 F.3d 474 (4th Cir. 1989), for the proposition that foster parents cannot be sued under 42 U.S.C. § 1983. But *Milburn* is inapplicable because Plaintiff did not sue the foster parents. Plaintiff sued the Therapeutic Foster Care agency, SCYAP, and Kim Long, the social worker, who are contracted to provide social worker services.

was in state custody. *Id.* at 225. Also, like here, the defendant could only provide services to the plaintiff because the defendant was authorized to do so by the state. *Id.* And, like here, because the plaintiff was in state custody, he had no choice but to rely on the provider chosen by the State. *Id.* In *Conner*, the Fourth Circuit found that these factors rendered the private party a state actor. *Id.* The same result should be reached here, especially since a child, like T.M., involuntarily committed to state custody because of child abuse or neglect enjoys at least if not more rights than a prisoner. *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982).[3]

Finding that the SCYAP Defendants acted under color of state law in this action is consistent with the conclusion of many courts that have held that nominally private parties are state actors when people involuntarily in state custody are housed in group facilities. For example, in *Perez v. Sugarman*, the Second Circuit held in similar circumstances that private institutions for children in foster care were acting under color of law because they were performing a public function that "would have to be performed by the Government but for the activities of the private parties." 499 F.2d 761, 765 (2d Cir. 1974); *see Duchesne v. Sugarman*, 566 F.2d 817, 822 n.4 (2d Cir. 1977) (declining to overturn *Perez*'s holding).[4]

---

[3] In *Holly v. Scott*, the Fourth Circuit declined to extend *West* and cases following it beyond Section 1983 claims. 434 F.3d 287 (4th Cir. 2006). That case involved a claim by a federal inmate arising under federal common law, not under Section 1983. In *Holly*, the Fourth Circuit emphasized that a different analysis is required for claims under federal common law lacking Congressional approval and claims under Section 1983—a statute passed by Congress. *Id.* at 294 n.4. Here, of course, Plaintiff brings his constitutional claims under Section 1983.

[4] *See, e.g.*, *Donlan v. Ridge*, 58 F. Supp. 2d 604, 610-11 (E.D. Pa. 1999) (holding that a private social service agency could be a state actor because the State had a constitutional obligation to provide for children in involuntary custody); *Jordan v. Dist. of Columbia*, --- F. Supp. 2d ----, Civil Action No. 11-1642(RC), 2013 WL 2458282, at *5 (D.D.C. June 7, 2013) (holding that a private psychiatric facility could be a state actor where the plaintiff alleged that the District of Columbia had delegated to the facility control over the plaintiff's medical care); *Fialkowski v. Greenwich Home for Children, Inc.*, 683 F. Supp. 103, 105 (E.D. Pa. 1987) (holding that where the State chose to delegate its statutory and constitutional obligations to care for an individual in

In sum, SCYAP and Kim Long were state actors because by agreeing to house T.M., a child placed involuntarily into state custody in foster care and housed with SCYAP, it took on the traditionally and exclusively public function of ensuring that the day-to-day care of T.M. met constitutional standards of safety and adequate treatment. "[T]o hold otherwise would allow the state to avoid its constitutional obligations simply by delegating to private [parties] its responsibility for the care of individuals it involuntarily confines, and would render meaningless" the rights of children involuntarily removed from their families. *Fialkowski*, 683 F. Supp. at 105.[5]

As a private entity, SCYAP is treated as municipal corporations for Section 1983 liability purposes. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that a municipal entity is liable under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or where constitutional deprivations are "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." 436 U.S. 658, 690-91 (1978).

2. **Failure to provide psychological and medical treatment to a foster child is unconstitutional and actionable under § 1983.**

Again, the factual allegations listed above and in Plaintiff's proposed Second Amended Complaint show that Defendants SCYAP and Kim Long failed to provide psychological

---

state custody, "neither the state nor the private entity may assert that the entity's acts and omissions do not occur under color of state law").

[5] The description of the specific state action test has varied by context. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (collecting contexts). As applicable here, however, the facts and law concerning SCYAP's taking on an exclusively public function persuasively and conclusively establish that SCYAP was acting under color of state law.

treatment and medical treatment for a child when they were contractually and constitutionally obligated to provide such services.

The Fourth Circuit set forth the constitutional standard for substantive due process vioaltions in *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010) (hereinafter, *Johnson*) (We now hold that when a state involuntarily removes a child from her home, thereby taking the child into its custody and care, the state has taken an affirmative act to restrain the child's liberty, triggering the protections of the Due Process Clause and imposing "some responsibility for [the child's] safety and general well-being."). *Internal citations omitted*.

The Fourth Circuit's decision in *Johnson* clearly held that the affirmative responsibility for a child's safety imposed by the Due Process Clause included a duty "not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security." *Johnson*, at 175 (quoting *DeShaney*, 489 U.S. at 199-200 (including "reasonable safety" as among an individual's "basic human needs" that an individual is unable to care for when he is taking into state custody)). Furthermore, as the Supreme Court has held in the context of involuntarily committed innocents generally, "the right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause" and it is unconstitutional to "confine the involuntarily committed . . . in unsafe conditions." *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982) (internal quotation marks omitted).

A child's substantive due process right to adequate care while in foster care includes the provision of necessary mental health treatment. The *Johnson* holding included express protection for a child's "general well-being," recognizing that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for . . . his basic human needs," including medical care, "it transgresses the substantive limits on state action set

9

by the Eighth Amendment and the Due Process Clause." *Johnson*, 597 F.3d at 171 (quoting *DeShaney* 489 U.S. at 199-200). Under Fourth Circuit precedent, medical care is not limited to care for "physical ills" but also includes mental health treatment. *See Bowring v. Godwin*, 551 F.2d 444 (4th Cir. 1977) ("We see no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart."). The Supreme Court has also recognized that an involuntarily committed individual's liberty interests entitle him to "reasonable care" as well as "minimally adequate or reasonable training," noting that the term "training" is synonymous with "treatment." *Youngberg*, 457 U.S. at 324, 319 & n.24. Therefore, the nature and scope of the substantive due process rights asserted by Plaintiff are well-recognized within this Circuit.

The question of whether a defendant's actions or inactions rise to the level of deliberate indifference is a fact-specific inquiry. *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982). Importantly, determining whether SCYAP and Kim Long acted with deliberate indifference requires credibility determinations, which are "properly resolved by a factfinder, not a judge ruling on a motion for summary judgment." *Germain v. Shearin*, 531 F. App'x 392, 396 (4th Cir. 2013) (internal quotation marks omitted).

In *Johnson*, the Fourth Circuit defined "deliberate indifference" in the context of claims by children in the foster care custody of the state as requiring "that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *Johnson*, 597 F.3d at 175 (quoting *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)). Where a defendant is an entity, such as SCYAP, rather than an official, deliberate indifference can be shown through the entities' omissions that manifest deliberate indifference or through policies and practices. *See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *Smith v.*

*Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013) ("Because Smith abandoned his claims against the individual officers and proceeded only against the Department under a theory of municipal liability, he had to establish deliberate indifference by reference to an official custom or policy.").[6] Deliberate indifference may be demonstrated even if a defendant does not know which particular individual will be harmed as a result of a substantial risk of harm, or the specific individual who will perpetrate that harm. *See Farmer v. Brennan*, 511 U.S. 825, 843 (1994).[7]

The facts in Plaintiff's proposed Second Amended Complaint demonstrate that SCYAP deprived T.M. of her substantive due process rights to a safe and secure placement and adequate care while in foster care,[8] through a pattern of inaction that rose to the level of deliberate indifference, and that he suffered serious harm and damages[9] as a result of this deprivation.

### III. Conclusion.

---

[6] Plaintiff may also demonstrate deliberate indifference on behalf of SCYAP through evidence of the deliberate indifference of its "top supervisory personnel." *Jensen v. Conrad*, 570 F. Supp. 114, 123 n.16 (D.S.C. 1983) (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2nd Cir. 1981)).

[7] The *Johnson* Court did not expressly hold as part of its definition of deliberate indifference in the foster care context that plaintiffs are required to demonstrate conduct that shocks the conscience. *See Johnson*, 597 F.3d at 175. Even if the shocks-the-conscience test were required in this case, Plaintiff has more than established a genuine issue of material fact as to conscience-shocking conduct on the part of the SCYAP Defendants.

[8] Section 1983 "imposes liability not only for conduct that directly violates a right but for conduct that is the effective cause of another's direct infliction of the constitutional injury." *Sales v. Grant*, 158 F.3d 768, 776 (4th Cir. 1998).

[9] Even in cases where actual injury is not established, proof of actual injury is not required for a due process claim to be actionable under Section 1983, as plaintiffs are entitled to proceed to trial and be awarded nominal damages. *See Gray v. Spillman*, 925 F.2d 90, 93-94 (4th Cir. 1991). Regardless, Plaintiff's evidence demonstrates that she suffered serious harm as a result of the sexual assault and ensuing lack of necessary mental health care that is compensable under Section 1983. *See, e.g.*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" (second alteration in original) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974))).

For the reasons stated above, Plaintiff asks the Court to "freely give leave when justice so requires" and allow Plaintiff to file her amended complaint.

Respectfully Submitted,

Dated: Camden, South Carolina
November 30, 2015

By: s//Robert J. Butcher
Robert J. Butcher
Deborah J. Butcher
S.C. Bar No. 74722
Fed Bar No. 9767
The Camden Law Firm, PA
509 Walnut Street
Camden, South Carolina 29020
P.O. Box 610
Camden, South Carolina 29021
Telephone:   (803) 432-7599
Facsimile:   (803) 432-7499
rbutcher@camdensc-law.com

Attorneys for Plaintiff T.M.